SUSAN M. PARISH *vs.* DANIEL PARISH and JAMES PARISH.

ANN PARISH and MARTHA SHERMAN *vs.* THE SAME.

JOSEPH DELAFIELD *vs.* THE SAME.

H. P., an intelligent, educated and retired merchant, made his will, in 1842.
In 1849 he was struck with apoplexy, followed by· paralysis of the right
side and epilepsy, and remained in that condition until 1856, when he died.
During that interval three papers were executed, purporting to be codicils
to his will, although he could neither speak, nor write, nor use a diction-
ary, or block letters, or letters in any way to signify his wishes.  *Held*
that he was incompetent to devise, and that the codicils were void.

The birth and death of relatives, or of legatees, and sales and purchases of
property, occurring after the execution of a will, do not constitute a revo-
cation of the will.  All implied revocations are abolished, except in the
cases specified in the revised statutes—marriage and birth of issue.

THESE were appeals from a decree of the surrogate of the
city and county of New York, admitting to probate the
will, with the first codicil, of Henry Parish, deceased.  The

testator was an intelligent and educated merchant, and, having retired from business, he made his will in 1842, then being fifty-four years of age. Having no children, he gave to his wife, Susan Delafield Parish, as devises and legacies, $331,000; to his two sisters, Ann Parish and Martha Sherman, legacies of $20,000 each; to his nieces, nephews and other relatives and friends, thirty in number, $300,000; and to his brothers, Daniel and James Parish, the residue of his estate, then valued at $36,879; declaring, by the 14th article, that "it is my will and intention that all the property, real and personal, that I may own or possess at the time of my decease shall pass under this will, whether the same be now owned or possessed by me, or may be hereafter acquired by purchase, descent, distribution or otherwise." Subsequently, this residue constantly increased by accumulation, and by the death of five legatees, whose legacies, to the amount of $50,000, lapsed to the estate. In 1849, after two premonitory attacks, he was suddenly struck with apoplexy, which was followed by a permanent paralysis or hemiplegia of the right side, and by severe epileptic convulsions, which continued with more or less frequency down to his death, in 1856. It was admitted that these and other diseases which he suffered during that period proceeded from the diseased condition of his brain. His case was marked by this peculiar characteristic, that he could neither speak nor write, nor use language in any shape or form for the expression of his mind. He retained his voice and could utter gutteral and inarticulate sounds, but no language. He had his vision, and the full and vigorous use of his left arm, hand and fingers, but he could not write with pen, pencil or chalk. He did not use a dictionary for pointing to words, and when block letters were placed before him, he brushed them aside. His pantomime, also, was of the most limited character, and, for the most part, unintelligible and inexpressive. It was urged on the one hand that he did not speak because his organs of speech were paralyzed, and that he did not write

or use letters because he would not.  On the other hand, his failure or omission in these respects were attributed to the loss of mind, arising from the deterioration of his brain, and that he did not write or speak, because he could not. It was admitted, however, that he could not originate an idea or spontaneously and of his own powers, express a wish ; and that his only mode of communication was by adopting or rejecting suggestions, ideas or questions, which might be made to him by his wife and others — a mode frequently failing to ascertain what he wanted.  He died in 1856, and his will, together with three codicils to it, were offered for probate.   The first codicil, executed in August, 1849, the month succeeding his apoplexy, devised property to his wife, valued at $200,000 ; the second, executed in 1853, bequeathed personal estate to her, of the value of $350,000, and the third, executed in 1854, revoked the appointment of his brother Daniel Parish as an executor, and also revoked the residuary estate to his two brothers, and bequeathed it to his wife. These devises and bequests were in addition to the amount given to her by the will.   These papers were drawn by the counsel of the wife's family, were suggested by her, and were executed by a mark, the counsel aiding Mr. Parish to make the mark, on the first, by guiding his hand, on the second, by steadying it, and on the third, by clasping his arm above the wrist and also about the elbow.   During the period between his attack and his death, 1849 to 1856, his wife received the income of his estate, and so much of the principal as matured from time to time, and invested the whole of the receipts, $576, 000, except the sum of $2700, in her own name, or in securities payable to bearer ; the former amounting to $392,641, and the latter to $180,700 ; all of which she claimed as her own by gifts from time to time by Mr. Parish.

Probate of the will, and of the three papers as codicils to it, was demanded by Joseph Delafield, one of the executors and a brother of the widow, and was resisted by Daniel and James Parish, the brothers of the testator, as residuary lega-

tees under his will, who denied the validity of the three papers, and by Ann Parish and Martha Sherman, the sisters of the testator, who denied the validity of both will · and codicils.

In December, 1857, the surrogate rendered his decision, admitting to probate the will, and the first paper, as a codicil to it, and rejecting the second and third. (His opinion will be found at length in 5 *New York Surrogates' Rep.* [1 *Redfield*] 1.)

*J. W. Edmonds,* on behalf of Ann Parish and Martha Sherman, insisted that, by reason of the sales, purchases and transfers of property since the date of the will, and the death of many legatees, and the birth of several relatives, there had been an implied revocation of the will, and that the surrogate erred in admitting the will and the first paper as a codicil to probate. The facts bearing upon this portion of the case, with the arguments upon them, are fully reported in 1 *Redfield,* 51 to 75.

*W. M. Evarts* and *F. B. Cutting,* on behalf of the widow, Susan M. Parish, and of Joseph Delafield, the executor, insisted that the second and third papers, rejected by the surrogate as codicils, were valid codicils, made without fraud or undue influence; and that Mr. Parish was a competent testator within the rule laid down in *Stewart* v. *Lispenard,* (26 *Wend.* 255.) A statement of their arguments, both upon the facts and upon the law, is reported very fully in 1 *Redfield,* 1 to 36, 75 to 91.

*Charles O'Conor,* in behalf of Daniel and James Parish, brothers of the testator and named residuary legatees in his will, insisted that the decision of the surrogate was erroneous in admitting the first paper as a codicil to the will, but was correct in setting aside the second and third codicils. That Mr. Parish lost his mind and was struck with utter incom-

petency by his attack in 1849, and that he continued in that condition until his death. That if his want of speech arose, as alleged, from a paralysis of the organs of speech, he could have remedied the difficulty, if he had any mind, by writing, or by pointing out words in a dictionary, or putting block letters into words by the use of his left hand, which was strong and vigorous. And that, failing these, he would, if he had any intelligence, have made himself understood by his pantomime and gestures. That these, however, were unintelligible, except to his wife, who claimed to be, as it were, inspired to understand him perfectly. And that the pretenses were a mere imposture upon the credulous few, whom she allowed to see him. It was also urged that her investments of nearly $600,000 of his estate *in her own name*, and claiming them as her own property, either as gifts *inter vivos* or as residuary legatee under the third codicil, were the usual badges of fraud, which seeks to sustain itself *by a double title*. A fuller statement of the respondents' argument, on the facts and the law, will be found reported in 1 *Redfield*, 36 *to* 50.

*By the Court,* DAVIES, P. J. First. As to the validity of the will bearing date September 20, 1842, we see no serious question made. At the time, the testator was of sound and disposing mind, and the will was executed in conformity with all the legal requisites, and none of its provisions are challenged as violating any principle of law.

We also think that no revocation in fact, or by operation of law, has been shown. None in fact has been alleged, and we do not see how, if the testator had no testamentary capacity after his attack on the 19th of July, 1849, to make a valid disposition of his property, it can with reason be said he had such capacity to revoke a legal disposition previously made. We regard the provisions of the revised statutes relative to the revocation of last wills and testaments, (2 *R. S.* 64, § 42,) as furnishing a conclusive answer to the argument

urged upon us, that the will of Mr. Parish was revoked by implication.

Second. In relation to the appeal of Miss Ann Parish and Mrs. Sherman from that portion of the decree or judgment of the surrogate, admitting to probate the codicil of August 29, 1849, and which was republished December 17, 1849, it is objected that they have no interest in the question presented on that appeal, and have therefore no right to make it. It is true, that if the will is established, they will take nothing by this codicil, and lose nothing by it, and whether the decision of the surrogate in reference to it is affirmed or reversed, their interests are unaffected.

But they are parties to the proceedings before the surrogate. They have been cited to appear before him, and have been heard there, and if the decision as to the will shall not be sustained, they would have a direct interest in the property passing under this codicil. The provisions of the revised statutes on the subject of appeals from the surrogate are, that after any will of real or personal estate, or both, shall have been proved before a surrogate, any devisee or legatee named therein, or any heir or next of kin to the testator may, within three months thereafter, appeal to the supreme court from the decision of the surrogate, either admitting such will to record or probate, or refusing the same. (2 *R. S.* 66, § 69.) By section 92, page 68, same volume, it is declared that the term "will," as used in that chapter, shall include all codicils as well as wills.

We think, therefore, under these provisions, these appellants had the right to appeal to this court from that part of the judgment of the surrogate admitting to probate the codicil of August 29, 1849.

We are not satisfied, from the testimony in this case, that at the time of making this codicil, or at the time it was republished, the testator had testamentary capacity to make the same; and for the purpose of ascertaining this question of fact, we direct a feigned issue to be made up to try that

Parish v. Parish.

question; and we direct the same to be tried at the next circuit court, to be held in and for the city and county of New York. The judgment of the surrogate admitting said codicil of August 29, 1849, to probate, is reversed.

Third. The appeals of Mr. Delafield and Mrs. Parish from that part of the surrogate's judgment refusing to admit to probate the second codicil, executed September 15, 1853, and the third codicil, executed June 15, 1854, properly bring before this court the correctness of the surrogate's decision on these codicils.

We entirely concur in the conclusions to which he has arrived in reference to them, and deem his reasons therefor sound and unanswerable. His judgment refusing to admit these codicils to probate is affirmed.

The costs of all the parties on these appeals, with a reasonable counsel fee, to be certified by one of the justices of this court, may be paid out of the funds of the estate.(a)

[NEW YORK GENERAL TERM, December 31, 1858. *Davies, Ingraham* and *Sutherland*, Justices.]

(a) Ann Parish and Martha Sherman waived their right to a feigned issue, to try the validity of the first codicil, as a matter in which they had no interest; the will being held to be valid, by which they were specific legatees and their brothers the residuary legatees. They appealed directly to the court of appeals. Susan M. Parish also appealed, and upon her death her appeal was revived in the name of her devisees, her brothers Henry, Joseph, Edward, Richard and Rufus Delafield. The brothers of the testator, Daniel and James Parish, made no appeal from that part of the decision of the surrogate admitting the first paper to be a codicil to the will. It embraced real estate only, which could not be affected by a decree upon the probate. The court of appeals affirmed the decision of this court, and held the testator to have been incompetent from the date of his attack in 1849, and that he so continued. (25 *N. Y. Rep.* 9.) This disposed of the 2d and 3d papers; and the 1st was set aside by the judgment of the superior court of the city of New York, in a suit brought by the brothers of the testator against the brothers of the widow. In a similar suit in the supreme court, the large investments made by Mrs. Parish *in her own name*, from the receipts of her husband's estate, during his incapacity, were declared to be invalid, and were ordered to be surrendered to his executors.

Thus the will of the testator was sustained, and the three papers made subsequent to his apoplexy, paralysis and epilepsy, were set aside.